| | | |
|---|---|---|
| | AUSA: Jihan Williams | Telephone: (313) 226-9520 |
| AO 91 (Rev. 11/11) Criminal Complaint | Special Agent: Daniel Bowling | Telephone: (901) 201-1342 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
v.
Deon "Stretch" KEY

Case No.  2:20-mj-30417
Judge: Unassigned,
Filed: 10-05-2020 At 05:11 PM
SEALED MATTER (krc)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  August 20, 2020 to September 23, 2020  in the county of  Wayne  in the  Eastern  District of  Michigan , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C §§ 841 (a) | Distribution of a Controlled Substance (heroin) |

This criminal complaint is based on these facts:
See attached Affidavit

☐ Continued on the attached sheet.

*Daniel Bowling*
Complainant's signature

Daniel Bowling, Special Agent, ATF
Printed name and title

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date:  October 5, 2020

City and state:  Bay City, MI

Judge's signature

Hon. Patricia T. Morris, United States Magistrate Judge
Printed name and title

# AFFIDAVIT
# IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT AND ARREST WARRANT

I, Daniel Bowling, a Special Agent with the Bureau of Alcohol, Firearms, Tobacco, and Explosives, being duly sworn, state as follows:

## AFFIANT'S EXPERIENCE

1. I am a Special Agent with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I have been employed by the ATF since July 26, 2015. I completed Special Agent Basic Training and Criminal Investigative Training at the Federal Law Enforcement Training Center. I was previously employed as a Police Officer with the Metropolitan Nashville Police Department in Nashville, Tennessee from March of 2008 through May of 2015. During my time there, I was assigned to the Gang Unit from August of 2012 until May of 2015. My duties included, but were not limited to, conducting controlled purchases of narcotics through utilization of confidential informants, application for and execution of search warrants on persons, residences, and vehicles, debrief of confidential informants, interview witnesses and proffered defendants. In addition, I analyzed toll records and led investigations that resulted in the interception of wired

1

communications. I have testified in all levels of court proceedings, both at the state and the federal level. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. As an ATF Special Agent, I have participated in federal investigations involving the illegal acquisition, distribution, and possession of illegal narcotics, to include but not limited to cocaine, heroin, and methamphetamine. During these investigations, I have participated in various types of investigative techniques, to include electronic surveillance, undercover agents and informants, and controlled purchases of narcotics and firearms from suspects. I have participated in physical surveillance operations and have participated in the execution of federal arrest and search warrants. In addition to utilizing the aforementioned investigative techniques, I have been required during these investigations to analyze information resulting from traditional record searches, as well as reviewing previous case files. Through my training and experience, I have become familiar with the manner in which illegal narcotics are transported, stored, and distributed, the methods of payment for such illegal narcotics, and the manner in which illegal narcotics traffickers communicate with each other.

## PURPOSE OF AFFIDAVIT

2. This affidavit is made in support of an application for a criminal complaint for Deon "Stretch" KEY.

3. I have probable cause to believe that between the dates of August 20, 2020 to September 23, 2020, Deon KEY did distribute heroin, in violation of Title 21 U.S.C. §§ 841(a).

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause of a violation of federal criminal offenses, specifically Title 21 U.S.C. §§ 841(a).

## PROBABLE CAUSE

5. The probable cause relied upon in this affidavit was acquired utilizing multiple investigative resources, including undercover drug purchases, surveillance, and analysis of cell phone toll records.

6. On August 4, 2020, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agents (SA) Daniel Bowling and Andrew Bogle debriefed ATF Confidential Informant (CI) 15XXX regarding his/her interaction with an individual who the CI knows as 'STRETCH', later identified as DEON KEY. The CI has known KEY for a long period of time. The CI stated KEY is the

3

"Kingpin" of an armed drug trafficking organization (ADTO) that consists of approximately 5-7 people (to the CI's knowledge) that distribute quantities of heroin in the area of Schoolcraft and Telegraph Road, Detroit, MI. The CI stated that members of the organization are frequently armed with handguns and hide the firearms in their waistband or under their car seats while conducting narcotics transactions. The CI stated that the organization works as a dispatch style system where a call is placed to the main number and a "runner" will arrive and conduct the narcotics transaction. The CI knows KEY to utilize telephone number 313-207-XXXX.

7. On this same date, SA Bowling researched KEY's criminal history via the National Crime Index Center (NCIC) and observed the following criminal history; 2006-assault (**conviction**), 2007-dangerous drugs, 2007-drugs (**conviction**), 2008-assault, 2009-assaulting a police officer and evading arrest(**conviction**),2016- fraudulent activities, 2018-dangerous drugs, 2020 felony narcotics (pending).

## AUGUST 20, 2020, HEROIN TRANSACTION #1
## DEON KEY

8. On Thursday, August 20, 2020, ATF Agents were involved in the surveillance of an undercover purchase of suspected heroin from DEON KEY. ATF Undercover ("UC") coordinated a meet with KEY for the purpose of purchasing an amount of heroin from KEY. On this date, at approximately 12:01pm, the UC activated the ES recording equipment. The UC agreed to meet KEY on Stoepel Street, Detroit, Michigan. The UC turned onto Stoepel Street then observed KEY (in a white Dodge Durango SRT) coming down Barr Street KEY flashed his lights to alert the UC and the UC turned onto Barr Street. At approximately 12:23pm, KEY then approached and parked so that his vehicle could be window to window with the undercover vehicle (UCV). The UC then rolled down his window and made contact with KEY, while KEY remained in his vehicle and the UC and CI#1 remained in the UCV.

9. Upon contact, extended his arm out of the window and handed the UC a plastic baggie containing the suspected heroin. (See below). The UC produced an electronic digital scale and the UC was able to confirm the approximate weight of twenty-nine (29) gross grams.

5



8. The UC then asked KEY how much he owed him and KEY confirmed $1,680.00 ($60.00 per gram). The UC then counted out the money, reached out and paid KEY with the amount of prerecorded ATF Agent Cashier funds necessary to complete the transaction ($1,680.00). The CI then told KEY that the UC would be returning in a couple of days (to make another purchase). A field test of the suspected heroin was not conducted per ATF policy, however based on the fact that the UC was purchasing heroin from KEY and based on the agents training and experience and the appearance of the substance, the substance purchased is believed to be heroin.

### AUGUST 31, 2020 HEROIN TRANSACTION
### DEON KEY #2

9. On August 31, 2020, at approximately 6:28pm, at approximately 7:39pm, the UC initiated text message communication with KEY. The UC advised

KEY that he wanted to purchase "a couple" more ounces of heroin on the following day (September 01, 2020). KEY responded in the affirmative.

10. On 9/1/2020 at approximately 10:55am, the UC received an incoming call from KEY. KEY asked the UC how much (heroin) the UC wanted. The UC advised that he wanted to purchase two (2) ounces. KEY affirmatively acknowledged and told the UC to call him when the UC was close. The UC affirmatively acknowledged and the phone call was concluded. The UC and KEY continued to engage in cell phone communication for the purpose of arranging the meeting. The UC eventually advised KEY that he was arriving at the McDonalds near Livernois and Grand River. KEY agreed to meet there and told the UC that he would be arriving shortly.

11. During the conversation between the UC and KEY, surveillance units were conducting mobile and aerial surveillance on KEY. KEY was observed driving directly to the McDonald's restaurant located at 98XX Grand River Ave, Detroit, Michigan.

12. Upon contact, KEY extended his arm out of his window and handed the UC a plastic baggie containing the suspected heroin, (see below). The UC then reached out and paid KEY with $3,360 in prerecorded ATF Agent Cashier funds, (see below). The UC then asked KEY, "The number still the same?" KEY responded in the affirmative by stating "yeah". KEY departed from the parking

7

lot, as did the UC and at approximately 4:56pm, the ES recording equipment was terminated.



13. The suspected heroin purchased by the UC was subsequently weighed by agents. The suspected heroin weighed approximately fifty-eight (58) gross grams, with packaging and was placed into evidence. A field test of the suspected heroin was not conducted per ATF policy, however based on the fact that the UC was purchasing heroin from KEY and based on the agents training and experience and the appearance of the substance, the substance purchased is believed to be heroin.

## SEPTEMBER 23, 2020 HEROIN TRANSACTION #3
## DEON KEY

14. On September 23, 2020, the UC initiated text message communication with KEY. The UC and KEY discussed the purchase of heroin and agreed to meet at approximately 02:00 pm.

15. Prior to the meet between the UC and KEY, surveillance units were conducting mobile and aerial surveillance on KEY. KEY arrived at the McDonald's located at 98XX Grand River Avenue and meet with the UC.

16. Upon contact, KEY immediately extended his arm out of his window and handed the UC a plastic baggie containing the suspected heroin. The UC then reached out and paid KEY with $1680.00 in prerecorded ATF Agent Cashier funds. KEY departed from the parking lot, as did the UC and at approximately 02:54 pm, the ES recording equipment was terminated.

17. The suspected heroin purchased by the UC was subsequently weighed by agents. The suspected heroin weighed approximately thirty (30) gross grams, with packaging and was placed into evidence. A field test of the suspected heroin was not conducted per ATF policy, however based on the fact that the UC was purchasing heroin from KEY and based on the agents training and experience and the appearance of the substance, the substance purchased is believed to be heroin.

## CONCLUSION

18. Based on the foregoing facts and circumstances, I respectfully submit that there is probable cause to believe that between August 20, 2020 and September 23, 2020, within the Eastern District of Michigan, **Deon Key** committed the following criminal offense: Title 21 U.S.C 841(a) – Distribution of a Controlled Substance (heroin more than 100 grams).

_Daniel Bowling_
_____
Daniel Bowling
Special Agent
ATF

Sworn to before me and signed in my presence
And/or by reliable electronic means

_____
Hon. Patricia T. Morris
United States Magistrate Judge
Eastern District Of Michigan